UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MOHAMMAD RASEL,

        Petitioner,

    v.                                      19-CV-458
                                            DECISION AND ORDER
WILLIAM BARR;

THOMAS FEELEY,
Field Office Director for Detention and
Removal, Buffalo Field Office, Bureau of
Immigration and Customs Enforcement;

JEFFREY SEARLS,
Facility Acting Director Buffalo Federal
Detention Facility,

        Respondents.

---

On June 19, 2018, a border patrol agent found the pro se petitioner, Mohammad Rasel, in Texas not far from the international border between the United States and Mexico. He had crossed the border the previous day, and he claimed that he was fleeing political persecution in Bangladesh.

The Department of Homeland Security ("DHS") has detained Rasel since that border patrol agent found him nearly fifteen months ago. He now petitions this Court for a writ of habeas corpus, seeking release from his detention. For the following reasons, Rasel's petition is denied.

## BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS"). Other facts, provided by Rasel, are undisputed.

### IMMIGRATION HISTORY, ASYLUM APPLICATION, AND REMOVAL PROCEEDINGS

Rasel is a thirty-one-year-old man who is a citizen and native of Bangladesh. Docket Item 1 at 3; Docket Item 10-1 at 2. He came to the United States "seeking refuge and a better future." Docket Item 1 at 3. His cousin is a citizen of the United States who lives in Brooklyn, New York, with a wife and two children, all United States citizens. Docket Item 1 at 33.

DHS is not certain exactly where or when Rasel entered the United States, but he did so from Mexico on or about June 18, 2018. Docket Item 10-1 at 2. The next day, a border patrol agent found Rasel in the Rio Grande Valley and placed him in detention. *Id.* On August 7, 2018, an asylum officer concluded that Rasel had established a credible fear of persecution in Bangladesh because of his political opinion. *Id.*

### REMOVAL PROCEEDINGS

On August 29, 2018, DHS began removal proceedings against Rasel. *Id.* at 3. According to an immigration judge, on November 14, 2018, "by and though his counsel[, Rasel] admitted to the facts and allegations in the Notice to Appear and conceded removal." Docket Item 10-2 at 17. The immigration judge gave Rasel until November 1, 2018, to file an application for asylum and withholding of removal, but Rasel did not do

so. *Id.* After the government moved to "deem the request for relief abandoned and dismissed for lack of prosecution," the immigration judge held a hearing on November 14, 2018, and determined that Rasel did not show "good cause" for missing the deadline. *Id.* at 17-18. Therefore, the immigration judge ordered Rasel removed to Bangladesh. *Id.* at 18.

The Board of Immigration Appeals ("BIA") denied Rasel's appeal on April 30, 2019. *Id.* at 20-21. On May 10, 2019, DHS sent a letter to the Embassy of the People's Republic of Bangladesh requesting that it provide Rasel and DHS with a travel document within thirty days authorizing Rasel to return to that country. *Id.* at 22-23.

On May 16, 2019, Rasel filed a petition for review of the BIA's decision with the Second Circuit. Petition, *Rasel v. Barr*, No. 19-1433 (2d Cir. May 16, 2019). The Second Circuit granted Rasel's motion for a stay of removal on July 8, 2019. Motion Order, *Rasel v. Barr*, No. 19-1433 (2d Cir. July 8, 2019). Rasel's petition remains pending before the Second Circuit.

**DETENTION-RELATED PROCEEDINGS**

On August 15, 2018, DHS determined that Rasel was detained under 8 U.S.C. § 1226(a) and that his detention would continue pending a final administrative decision in his case. *Id.* About three months later, an immigration judge denied Rasel's request under 8 C.F.R. § 236.1(c) for a change in custody. Docket Item 10-2 at 13.[1] Rasel later

---

[1] The government has submitted a declaration from Brandon M. Smith, a deportation officer employed by DHS, Docket Item 10-1. Smith declares that an immigration judge "also held Petitioner's bond hearing on October 2, 2018." *Id.* at 4. But Smith does not cite any pages in the DHS file, Docket Item 10-2, supporting that statement. This Court has reviewed the file and cannot find evidence of any bond hearing other than the custody change request that was denied on October 23, 2018.

requested that he be released on humanitarian parole. On February 5, 2019, a DHS agent denied that request. Docket Item 10-2 at 19.

On June 10, 2019, DHS told Rasel that it would review his custody status on July 19, 2019. Docket Item 10-1 at 6; Docket Item 10-2 at 25. More specifically, DHS advised Rasel that "[r]elease . . . is dependent on your demonstrating by 'clear and convincing evidence' that you **will not** pose a danger to the community and **will not** be a significant flight risk." *Id.* (emphasis in original). And "[y]ou must also demonstrate that a travel document is not available in the reasonable [sic] foreseeable future to effect your removal from the United States." *Id.*

On July 25, 2019, after its review of Rasel's custody status, DHS issued a "Decision to Continue Detention." Docket Item 10-2 at 26-27. In its decision, DHS found that Rasel has

> limited education, familial support, and employment prospects. [Rasel] entered the United States without proper legal documents or a valid entry document and admitted to illegally crossing the international boundary without being inspected by an Immigration Officer. Given these factors, [Immigration and Customs Enforcement ("ICE")] considers that [Rasel] may pose a risk of flight.

*Id.* at 27.

In the meantime, Rasel filed a petition for a writ of habeas corpus with this Court on April 8, 2019. Docket Item 1. On August 2, 2019, the government responded, Docket Items 10, 11; and on August 15, 2019, Rasel replied, Docket Item 12.

## **DISCUSSION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of

4

the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The government maintains that Rasel is validly detained under 8 U.S.C. § 1226(a) and that his "constitutional rights have [not] been violated." Docket Item 10 at 5. Rasel makes two arguments to the contrary. Docket Item 1 at 8. First, he argues that his prolonged detention is not justified by individualized findings made in "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001) (quoting *Shaughnessy v. United States ex. rel Mezei*, 345 U.S. 206, 212 (1953)). *See id*. Second, he argues that the "government's categorical denial of bail to certain non citizens violates" the Excessive Bail Clause. *Id*.

Because Rasel is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

I.     **PROCEDURAL DUE PROCESS**

Rasel argues that "[t]o justify [his] ongoing detention, due process requires that the government establish, at an individualized hearing before a neutral decision maker, that [his] detention is justified by clear and convincing evidence of flight risk or danger, even after consideration whether alternatives to detention could sufficiently mitigate that risk." Docket Item 1 at 8.

The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any "person . . . of . . . liberty without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."

5

*Zadvydas*, 533 U.S. at 690.  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and 'narrow' nonpunitive 'circumstances,' . . . where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'"  *Id.* (internal citations omitted) (emphasis in original).  Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government."  *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019) (Gorsuch, J., announcing the judgment of the Court and delivering an opinion).

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."  *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see also Mezei*, 345 U.S. at 212 ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").  At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens."  *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).  The Due Process Clause is not offended by the mandatory detention of aliens for the "*brief period necessary* for their removal proceedings," *id.* at 513 (emphasis added), but a detained alien "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified." *id.* at 532 (Kennedy, J., concurring).

6

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans v. Searls*, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). "As the first step, the Court considers whether the alien's detention has been unreasonably prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). If the government has not provided the procedural safeguards required by the Due Process Clause to an alien subject to unreasonably prolonged detention, "then his continued detention violates procedural due process." *Id.*

In this case, even assuming that Rasel's detention is unreasonably prolonged, the government has not violated his procedural due process rights. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis lead to the conclusion that Rasel's due process rights have not been violated because of the § 1226(a) bond hearing that he received.

### A. The Private Interest Affected

Rasel's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Rasel has an obvious interest in his "[f]reedom from imprisonment—from

7

government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Here, however, his interest "is not liberty in the abstract, but liberty *in the United States*." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original). In that regard, the Second Circuit has stayed Rasel's removal in light of its review of the BIA's removal decision, and he therefore is being denied his freedom while he litigates his "right 'to stay and live and work in this land of freedom.'" *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (quoting *Bridges v. Wixon*, 326 U.S. 135, 154 (1945)).

Other than his cousin, who is a United States citizen and who has offered Rasel a place to live, Rasel's petition provides little information about any ties to the United States that strengthen his interest in being free from detention in this country as opposed to being free from detention elsewhere. *Cf. id.* (losing "the right to rejoin [one's] immediate family [is] a right that ranks high among the interests of the individual"). And because Rasel was in the United States for only one day before the border patrol found him, he is someone "who has entered the country clandestinely, and who has been here for too brief a period to have become, in any real sense, a part of our population, before his right to remain [was] disputed." *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903). *See* Docket Item 10-1. Nevertheless, because of Rasel's *pro se* status, and because "[t]his Court has come to believe that no rational person would subject himself or herself to unreasonably prolonged detention in a jail-like detention facility unless that person's liberty interests in remaining in the United States are quite strong," *Joseph v. Barr*, 2019 WL 3842359, at *8 (W.D.N.Y. Aug. 15, 2019) (quoting *Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019)), the Court presumes that

Rasel has a substantial interest in release from detention in the United States. And that interest is elevated given Rasel's claims of persecution in his home country of Bangladesh.

### B. The Government's Interests at Stake

The government may have several interests in detaining Rasel. First, because a DHS border agent found Rasel on the border between the United States and Mexico within a day of when he crossed the territorial boundary, his detention implicates the government's interest in managing who may enter the country. Furthermore, the government may have interests in preventing risk of Rasel's flight or his danger to the community pending the conclusion of his immigration proceedings. This Court addresses each of these interests in turn.

### 1. The Government's Interest in Controlling Admission to the United States

When analyzing the process due to noncitizens, there is a relevant "distinction between an alien who has effected an entry into the United States and one who has never entered." *Zadvydas*, 533 U.S. at 693. After all, if release from physical confinement means that noncitizens who have never "entered" our country "be released into American society," *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 394 (3d Cir. 1999) (quoting *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448 (9th Cir. 1995)), release may "'ultimately result in our losing control over our borders,'" *id.* (quoting *Jean v. Nelson*, 727 F.2d 957, 975 (11th Cir. 1984)). Therefore, the nature of protection under the Due Process Clause "may vary depending upon [a noncitizen's] status and circumstance." *Zadvydas*, 533 U.S. at 694. As the Second Circuit once explained:

> A "parolee," even though physically in the country, is not regarded as having 'entered' and thus has not acquired the full protection of the Constitution. If he is required to leave the United States, he is being excluded, not expelled. . . . Conversely, an alien whose initial physical presence here was illegal, but whose presence is recognized as an "entry" in law, is said to be subject to expulsion, not exclusion. He is entitled to "additional rights and privileges not extended to those in the former category who are 'merely on the threshold of initial entry.'" [*Leng May Ma v. Barber*, 357 U.S. 185,] 187 [(1958)].

*United States ex. rel. Kordic v. Esperdy*, 386 F.2d 232, 235 (2d Cir. 1967).

Rasel has a paradoxical argument that because he was an "illegal entrant," he may be "accorded many more procedural and substantive rights than aliens who properly petition for entry" at a port of entry. *See Augustin v. Sava*, 735 F.2d 32, 36 n.11. In other words, government's interest in controlling his admission to the country is lessened because, in fact, he did enter the country. But this heightened status based on circumstance is reserved for those noncitizens who entered this country illegally and then spent some time becoming part of the community. In contrast, Rasel was spotted along the border within a day of entering the United States. So he is someone "who has entered the country clandestinely, and who has been here for too brief a period to have become, in any real sense, a part of our population, before his right to remain [was] disputed." *Yamataya*, 189 U.S. at 100. Stated another way, Rasel was "'merely on the threshold of initial entry'" when he was first detained. *Kordic*, 386 F.2d at 235 (quoting *Leng May Ma*, 357 U.S. at 187. Therefore, the government continues to maintain a strong interest in controlling Rasel's admission to this country; in fact, the government has a heightened interest that is quite similar to that when it detains someone at a port-of-entry.

### 2. The Government's Other Interests in Detention

The government may have other strong interests in Rasel's detention. "The government's interest in preventing crime by arrestees is both legitimate and compelling." *United States v. Salerno*, 481 U.S. 739, 749 (1987). And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991).

### C. The Risk of Erroneous Deprivation of Rasel's Interests Through the Procedures Used

There is a serious risk of erroneous deprivation of Rasel's liberty interests from the procedures used thus far. Rasel did receive an individualized custody hearing before an immigration judge, but that hearing tilted the balance in the government's favor. Under the applicable regulations, "[a]n alien who seeks a change in custody status must establish to the satisfaction of the Immigration Judge and the [BIA] that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'" *Matter of Hussam Fatahi*, 26 I & N Dec. 791, 793 (BIA 2016) (quoting *Matter of Guerra*, 24 I & N 37, 40 (BIA 2006)). So even when the government has no evidence that there is any reason to deprive an alien of his or her liberty, the alien will remain detained because the alien bears the burden of proof. What is more, a detained alien, often proceeding *pro se*, will have an extraordinarily difficult time obtaining evidence—such as letters from the community or medical records—that might demonstrate that he or she is not a flight risk or a danger. And even if that were not so, proving a negative can be next to impossible.

The fact that the burden of proof is simply "to the satisfaction of the Immigration Judge"—as opposed to a more traditional, defined standard such as by clear and convincing evidence—only increases the likelihood of arbitrary decision-making.  What might satisfy one immigration judge might not satisfy another.  And even if evidentiary burdens can be fickle from a legal-realist perspective, at least they reflect an attempt to remove some arbitrariness from the consideration of evidence.  The standard of proof in § 1226(a) bond hearings, however, makes no such attempt.

D.  **Balancing the Competing Interests At Stake**

Nevertheless, "the question remains what process is due."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  "[N]ot all situations calling for procedural safeguards call for the same kind of procedure."  *Id.*  "[A] balancing of the competing interests at stake" and a comparison to similar cases dictate the appropriate process due.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

There is no doubt that both Rasel's and the government's interests are very strong.  But even though Rasel challenges the procedures addressing his detention and not his admission, those two actions—while distinct—are sufficiently related in this case that the government's interests outweigh any risk of erroneous deprivation of his liberty associated with the procedures it has used.  *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)) ("'[O]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens.").  This Court has recently balanced similar competing interests for an entering alien and determined that the balance requires a searching and periodic "'rigorous review of [the alien's] eligibility for' release" based on individualized findings.

12

*Clerveaux v. Searls*, 2019 WL 3457105, at *16 (W.D.N.Y. July 31, 2019) (quoting *Chi Thon Ngo*, 192 F.3d at 399). At least at this point in Rasel's detention, this Court cannot say that his § 1226(a) bond hearing was a facially invalid process for meeting that standard. And Rasel does not argue that his individual § 1226(a) bond hearing, notwithstanding its serious risk for error, failed to satisfy this standard.[2] Therefore, Rasel was provided an appropriately "meaningful opportunity to invoke the discretion of the decisionmaker," *Laudermill*, 470 U.S. at 543, and his procedural due process claim fails.

## II. EXCESSIVE BAIL CLAUSE

Rasel argues that the "government's categorical denial of bail to certain non citizens violates the right to bail encompassed by the Eighth Amendment." Docket Item 1 at 8. For the following reasons, Rasel lacks standing to adjudicate this claim.

"An important component of the Article III jurisdictional limit of federal courts to deciding 'cases' or 'controversies' is standing." *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). To establish standing, the party must allege (1) an "injury in fact," (2) "a causal connection between the injury and the conduct

---

[2] A § 1226(a) bond hearing at which an arriving alien detainee like Rasel received only a "grudging and perfunctory review" of his eligibility for release from prolonged detention may not satisfy the requirements of due process. *See Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999). Although *pro se* submissions, "should be read 'to raise the strongest arguments that they suggest,'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)), Rasel explicitly emphasizes in his reply that he is "not challenging the Immigration Judge's weighing of the evidence presented at his bond hearing or the Immigration Judge's discretionary decision to deny bond but rather asserts that the procedures that bond hearing followed were constitutionally and statutorily infirmed." Docket Item 12 at 3. Although he mentions a statutory claim in his reply, this Court finds no such claim in his petition. *See* Docket Item 1.

13

complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 503 U.S. 555, 560 (1992) (internal citations omitted). In this case, Rasel's injury—the denial of his liberty—does not bear "a causal connection" to "the conduct complained of." *Id.* Rasel does not deny that he had a bond hearing where an immigration judge denied bail based on individualized findings. Therefore, regardless of whether he is correct in his claim that the "government's categorical denial of bail to certain non citizens violates the right to bail encompassed by the Eighth Amendment," Docket Item 1 at 8, the government did not categorically deny *him* bail. It denied him bail based on individualized findings at a bond hearing. Therefore, Rasel's injury lacks a causal connection to the conduct complained of, and he lacks standing to bring this claim.[3]

---

[3] Of course, this Court must liberally construe pro se submissions, and the Excessive Bail Clause requires that any individualized denial of bail at least be supported by a rational basis in the record, *Finetti v. Harris*, 609 F.2d 594, 601 (2d Cir. 1979). But Rasel has explicitly disclaimed any argument that he is challenging the constitutionality of the immigration judge's decision to deny him bail. *See* note 2, *supra* (citing Docket Item 12 at 3).

14

**CONCLUSION**

At nearly fifteen months, Rasel's detention likely is unreasonably prolonged. This Court therefore expects that Rasel "will receive searching periodic" and "rigorous review[s] of his eligibility" for release from detention to ensure that he remains free from prolonged arbitrary imprisonment. *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 399 (3d Cir. 1999). If he does not, he may again seek relief. But for the foregoing reasons, the specific claims raised in Rasel's petition for a writ of habeas corpus are denied.

SO ORDERED.

Dated: September 9, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE